## MICCO, Gd'n, v. HUSER, County Judge. et al.

No. 28618. Dec. 20, 1938.

Rehearing Denied June 20, 1939.

Application for Leave to File Second Petition for Rehearing Denied July 11, 1939.

Joe Brown, Sam Clammer, and Frank Settle, for petitioner.

Rogers, Stephenson & Dickason and C. W. Clift, for respondents.

RILEY, J. This is an original action seeking a writ of prohibition, commanding E. Huser, county judge of Okfuskee county, Tom Hazlewood, special county judge, R. L. Davis and J. H. Doggett, respondents, to desist and refrain from further proceedings in a case in the Okfuskee county court entitled "In the matter of the Guardianship of Peter Micco, an Incompetent," and to terminate said guardianship proceedings.

The case presents a conflict in jurisdiction between the county court of Tulsa county and the county court of Okfuskee county, as to the appointment of a guardian for Peter Micco, an Indian incompetent. It appears that on March 23, 1938, George Deer, as a friend of Peter Micco, filed his petition in the county court of Okfuskee county, asking for the appointment of a guardian over the person and estate of said Peter Micco. The petition was regular in form and was duly verified. The petition prayed for the appointment of R. L. Davis as such guardian. E. Huser was and is the county judge of Okfuskee county, and on the same day the petition was filed, entered an order for hearing thereon for March 31, 1938, and directing that notice thereof be given to Peter Micco, at least five days before said hearing. Notice was issued and served upon Peter Micco in person on the same day.

The hearing was continued from time to

time until May 19, 1938. In the meantime, upon request of Sam Clammer, appearing as attorney for Peter Micco, E. Huser had certified his disqualification as county judge, and Tom Hazlewood was elected as special county judge.

In the meantime, on the 12th day of May, 1938, Hettie Micco, wife of said Peter Micco, joined by Joe Brown, probate attorney, and as a friend of Peter Micco, filed in the county court of Tulsa county a petition for the appointment of a guardian for the said Peter Micco, and on May 18, 1938, when said petition coming on for hearing in said court in Tulsa county, an order was made and entered appointing Hettie Micco guardian of the person and estate of said Peter Micco. She qualified as such guardian that day. On May 19, 1938, appearing specially, she filed a motion in the case in Okfuskee county to dismiss proceedings therein for appointment of a guardian, setting up the proceedings theretofore had in the county court of Tulsa county wherein Hettie Micco had been appointed by the county court of Tulsa county.

At the same time Dennie H. Petty, probate attorney of district No. 2, which includes Okfuskee county, appeared and orally objected to further proceedings in Okfuskee county. The motion to dismiss and objections of the probate attorney were denied and hearing was had resulting in an order appointing R. L. Davis and J. H. Doggett as guardians of the person and estate of said Peter Micco.

Petty, probate attorney, gave notice of appeal to the district court. Whether the appeal has been perfected does not appear.

Thereupon Hettie Micco, as guardian of said Peter Micco, filed herein the petition for writ of prohibition. Alternative writ was issued, and respondents have filed their response and a supplemental response. In the supplemental response, respondents request that Sam Clammer, J. A. Brown, United States Probate Attorney, and Jerome Fischer, judge of the county court of Tulsa county, be made parties to this action, to the end that they may be prohibited from acting further in the matter of the guardianship in Tulsa county.

By the response it is made to appear that on the 18th day of May, 1938, and before hearing in the Tulsa county case, George Deer asked and obtained leave to file "amicus curiae" application to dismiss the proceedings in Tulsa county for want of jurisdiction. Therein he set up substantially all the proceedings theretofore had in Okfuskee county; it was also alleged:

"* * * That after the filing of the said petition and the issuance and service of said notice hereinabove mentioned, it is the opinion of your petitioner that Peter Micco was induced to attempt to change his residence temporarily by designing persons, in an attempt to defeat the jurisdiction of the county court of Okfuskee county, Okla., and that your petitioner verily believes that said sojourn in Tulsa county, Okla., is temporary and has been brought about in an attempt to defeat the jurisdiction of the county court of Okfuskee county, said Okfuskee county being the actual residence of the alleged incompetent and the county in which his property is located and situated. * * *

"Your petitioner further states that Okfuskee county, Okla., is the actual residence of the alleged incompetent, and that the county court of Okfuskee county, Okla., took jurisdiction of this subject matter on the 23rd day of March, 1938, and that said matter has been pending in said court of Okfuskee county, Okla., since said time, and that Tulsa county, Okla., is not the residence of said alleged incompetent, and that this court does not have jurisdiction of the person and estate of the said alleged incompetent, for the reason that the jurisdiction of the county court of Okfuskee county. Okla., had attached before the filing of the petition herein and for the further reason that Tulsa county, Okla., is not the actual residence of the alleged incompetent."

Thus purporting to act "as friend of the court" rather than in his own behalf, he raised the question of the county of the actual residence of said Peter Micco at the time of said hearing, contending that his residence was in Okfuskee county at that time.

It is conceded, of course, that guardians appointed in both counties cannot administer the estate at the same time.

It appears to be conceded that Peter Micco was an actual resident of Okfuskee county at the time petition was filed and the notice served in that county, and that he moved to Tulsa county on or about the 4th day of April, 1938. It is not conceded, however, that he has been an actual resident in good faith of that county. But the county court of Tulsa county necessarily found that he was a resident of Tulsa county. Although appeal was perfected to the district court of Tulsa county, we must treat said finding and judgment as final and binding until the same has been reversed or modified on appeal.

Petitioner contends that the rule in such matters is that where the county court of one county has found as a fact and then judicially determined the jurisdictional facts necessary to proceedings in the appointment of a guardian, and has by order appointed a guardian, the jurisdiction there acquired is exclusive, and that such order is a bar to

guardianship proceedings in any other county of this state.

It was so held in Powers v. Brown, 122 Okla. 40, 252 P. 27. But in that case the proceedings were first commenced in Latimer county, and the first order appointing was made in that county, and its order was upheld as against a subsequent order appointing a guardian in another county on proceedings begun after the commencement of proceedings in Latimer county. The decision, however, is not based alone upon priority of commencement of proceedings. In the opinion it is said:

"The Latimer county court having first proceeded to final judgment, that determination is res judicata as to the jurisdictional facts necessary to proceedings in the appointment of a guardian in Pittsburg county. The jurisdiction acquired in Latimer county is exclusive and a bar to like guardianship proceeding in all other counties of the state." Citing Sewell v. Christian, 114 Okla. 177, 245 P. 632.

The latter case does not involve priority in commencement of proceedings, since proceedings were commenced in the two counties on the same day. In such circumstances the court quotes with approval Freeman on Judgments, vol. 2, sec. 719, where it is said:

"Where two actions involving the same issue or issues, between the same parties or their privies, are pending at the same time, so that a final judgment in one would be res judicata or a bar in the other, when the judgment in one becomes final it may be urged in the other by appropriate proceedings, regardless of which action was begun first. It is the first final judgment, although it may be in the second suit, that renders the matter res judicata in the other suit."

Again, in Jackson, Gd'n, v. Haney, 166 Okla. 13, 25 P.2d 771, attention is called to Freeman on Judgments, supra, and Sewell v. Christison is cited with approval, and the fourth paragraph of the syllabus holds:

"Where two actions involving the same issue, or issues, between the same parties or their privies, are pending at the same time, so that a final judgment in one would be res judicata or a bar in the other, when the judgment in one becomes final it may be urged in the other by appropriate proceedings, regardless of which action was begun first. It is the first final judgment, although it may be in the second suit, that renders the matter res judicata in the other suit."

It is also held in that case:

"Where the county court of one county has found as a fact and there judicially determined the jurisdictional facts necessary to proceedings in the appointment of a guardian of the person and estate of a minor and has by order appointed a guardian for such minor, the jurisdiction thus acquired is exclusive, and such an order appointing such guardian should be recognized as a bar to proceedings for the appointment of another person as guardian in another county court of this state, when the former appointment is called to the attention of the latter court before an appointment is made in the latter court."

Respondents contend: The jurisdiction of the county court "having been invoked by the filing of said petition, and the issuance and return of notice showing proper service on the alleged incompetent, said county court of Okfuskee county had jurisdiction co-extensive with the state, and to the exclusion of the county court of every other county in the state."

For this they cite and rely, in part, on the provisions of sections 1071 and 1418, O. S. 1931. Section 1071 provides:

"The county court of the county in which application is first made for letters testamentary or of administration in any of the cases above mentioned, shall have jurisdiction co-extensive with the state in the settlement of the estate of the decedent and the sale and distribution of his real estate and excludes the jurisdiction of the county court of every other county."

That section applies primarily to issuance of letters testamentary or of administration in the settlement of the estates of deceased persons. It is not by its terms made applicable to proceedings for the appointment of a guardian of a minor, for such appointment by express provisions of section 1419, O. S. 1931, must be made by the county court wherein the minor is an inhabitant or resident, or where the minor has property, if he resides without the state.

In Parmenter v. Rowe, 87 Okla. 158, 200 P. 683, it is said:

"Rev. Laws 1910, secs. 6195, 6196, 6197, and 6198, * * * apply in guardianship proceedings." (Sec. 6195, Rev. L. 1910, is the same as sec. 1071, O. S. 1931.)

In Parmenter v. Rowe, supra, it is held:

"The county court of the county in which application is first regularly made for letters of guardianship shall have jurisdiction co-extensive with the state in the settlement of the estate of the incompetent, and for the determination of any and all questions incident thereto, subject to the appellate jurisdiction of the district court."

That holding standing alone would appear to uphold the contention of respondents and call for a denial of the writ.

The first part of the third paragraph of the syllabus in Parmenter v. Rowe, supra, holds:

"Where a county court of this state appoints a guardian over the person and estate of an incompetent person and such proceedings are regular upon their face, the same are not subject to be attacked collaterally, and the court having assumed jurisdiction and made the appointment, such jurisdiction is co-extensive with the state and excludes the jurisdiction of the county court of every other county, and such taking of jurisdiction and making such appointment was the finding of every jurisdictional fact necessary to such appointment, and every other county court in the state is without jurisdiction to appoint a guardian for such incompetent."

That holding apparently supports the contention of petitioners, and since the proceedings in the Okfuskee county case are regular upon their face, the application was first regularly made in Okfuskee county, but the application in Tulsa county appears to have been regularly made, since the alleged incompetent was a resident of that county as found by the county court at the time the application was made and also at the time the appointment was made.

The question then arises, Can proceedings for the appointment of a guardian be regularly pending at the same time in two separate county courts?

If regularity of proceedings "upon their face" is all that is required, then, under the facts existing in this case, the answer must be in the affirmative. That two actions between the same parties or their privies, involving the same subject matter, may be regularly pending at the same time in courts of concurrent jurisdiction has many times been recognized. See Freeman on Judgments, supra, and cases therein cited.

In McDougal et al. v. Black Panther Oil Co. et al., 273 Fed. 113, it is held:

"Where two actions between the same parties involving the same cause of action proceed at the same time in courts of concurrent jurisdiction, it is not the final judgment in the action first brought, but the first final judgment, although that may be in the action last brought, that renders the issues res judicata in both actions."

In Hart Steel Co. v. Railroad Supply Co., 244 U. S. 294, 37 S. Ct. 506, 61 L. Ed. 1148, substantially the same rule was applied.

Since proceedings for appointment of a guardian, regular on their face, were pending at the same time in both counties, the rule in Sewell v. Christison, supra, is applicable. The reason is that the two courts being courts of concurrent or co-ordinate jurisdiction, the one is without power to vacate or set aside the judgment or decree of the other. Therefore, we hold that the final order or judgment first entered appointing a guard-

ian is res adjudicata or a bar in the other court. Having reached this conclusion, it is unnecessary to consider the application of respondent to make the county judge of Tulsa county and other parties herein.

Writ of prohibition as prayed for is granted.

OSBORN, C. J., BAYLESS, V. C. J., and WELCH and CORN, JJ., concur. GIBSON, HURST, DAVISON, and DANNER, JJ., dissent.

GIBSON, J. (dissenting). In my opinion the fact situation here involved is so different from the facts of the cases upon which the majority opinion rests, that those cases are not authority for the conclusion reached in the majority opinion.

The facts here are that on March 23, 1938, proceedings for the appointment of a guardian for the said Peter Micco, an alleged incompetent, were duly and regularly instituted in the county court of Okfuskee county, and notice of the hearing thereof was duly served upon Micco according to law (sec. 1445, O. S. 1931, 58 Okla. Stat. Ann. sec. 851). When the petition was filed and the notice was served, the alleged incompetent was a resident of Okfuskee county. But subsequently, and pending due continuance of the hearing, the petitioner herein, who is the wife of the alleged incompetent, joined by Joe Brown, U. S. Probate Attorney, as his next friend, filed a petition in the county court of Tulsa county for the appointment of a guardian. Thereafter the present petitioner was appointed guardian, and qualified as such in the county court of Tulsa county on May 18, 1938. The following day she appeared in the county court of Okfuskee county and moved for dismissal of the proceedings there, assigning as grounds her appointment in Tulsa county. In this she was joined by Dennie H. Petty, U. S. Probate Attorney for the district. The motion was denied, and after hearing had, R. L. Davis and J. H. Doggett were appointed guardians of the person and estate of the said Micco. Petty thereupon gave notice of appeal to district court, and Hettie Micco immediately instituted the present proceedings.

In the meantime E. Huser had disqualified in the matter, and Tom Hazlewood, who entered the order, was elected as special judge.

At the hearing in Tulsa county the residence of Peter Micco was placed in issue by petition filed amicus curiae by George Deer, who was the petitioner as next friend of Micco for the appointment in Okfuskee county. That issue was evidently decided against the contention of Deer, for the proceedings appointing guardian are apparently valid

on their face and therefore carry the presumption of valid adjudication of jurisdictional questions. Section 1082, O. S. 1931, 58 Okla. Stat. Ann. sec. 2; Powers v. Brown, 122 Okla. 40, 252 P. 27.

Petitioner contends that she is entitled to the writ under the rule expressed in Powers v. Brown, supra, and in this connection asserts that according to the holding in that case the order of the county court of Tulsa county was res judicata as to all jurisdictional facts necessary to the proceedings in Okfuskee county. The general rule as stated in the Powers Case reads as follows:

"Where the county court of one county has found as a fact and there judicially determined the jurisdictional facts necessary to proceedings in the appointment of a guardian of the person and estate of minors and has by order appointed a guardian for such minors, the jurisdiction thus acquired is exclusive and such an order appointing such guardian is a bar to guardianship proceedings in another county court of this state."

In further support of the foregoing contention, petitioner cites Sewell v. Christison, 114 Okla. 177, 245 P. 632; Jackson v. Haney, 166 Okla. 13, 25 P.2d 771; Woodruff v. Firestone, 182 Okla. 606, 79 P.2d 210.

On the other hand, the respondents contend that the jurisdictional question is controlled by the statutes, sections 1071, 1418, O. S. 1931, 58 Okla. Stat. Ann. secs. 7, 893, which, it is alleged, by their express terms place exclusive jurisdiction in the county court where petition for appointment of guardian is first properly filed. They would support this contention by State ex rel. Monahawee v. Hazelwood, 81 Okla. 69, 196 P. 937; Parmenter v. Rowe, 87 Okla. 158, 200 P. 683; Baird v. England, 85 Okla. 276, 205 P. 1098; State ex rel. Mudd v. County Court of Osage County, 168 Okla. 470, 34 P.2d 244; Dillard v. Franklin, 177 Okla. 34, 57 P.2d 629.

Sections 1071 and 1418, supra, read, respectively, as follows:

"The county court of the county in which application is first made for letters testamentary or of administration in any of the cases above mentioned, shall have jurisdiction co-extensive with the state in the settlement of the estate of the decedent and the sale and distribution of his real estate and excludes the jurisdiction of the county court of every other county.

"The power conferred upon the county judge in relation to guardians and wards may be exercised by him at chambers or as the acts of the county court, when holding such; and any order appointing a guardian must be entered as and become a decree of the court. The provisions of this chapter relative to the estates of decedents, so far as they relate to the practice in the county or district courts, apply to proceedings under this article."

These sections were carried over from the territorial statutes and placed in force after statehood. They are the same as sections 1255 and 1637 of chapter 19, Laws of 1890.

The above cases cited in support of respondent's contention, except Parmenter v. Rowe, supply section 1071 as a rule of law governing the question of jurisdiction as between county courts attempting to administer upon decedents' estates, that is to say, the court where petition for administration or for probate of a will is first filed shall have jurisdiction to the exclusion of all other courts. But in all of those cases the court where petition was first filed had entered orders wherein it had determined all jurisdictional questions prior to such determination by the court where a second petition had been filed. In Parmenter v. Rowe it was held that section 1071 was applicable in guardianship cases by reason of the provision in section 1418 that "the provisions of this chapter relative to the estates of decedents, so far as they relate to the practice in the county or district courts, apply to proceedings under this article." However, it is there disclosed that the appointment of guardian was made by the court where petition was first filed, thus settling the jurisdictional questions prior to such adjudication by the court where a second petition was filed. It appears, therefore, that the application of section 1071 in the cases cited by respondents was unnecessary to the different decisions and, as suggested in Presbury v. County Court of Kay County, 88 Okla. 273, 213 P. 311, may have constituted no more than dictum. In the Parmenter Case the rule as to guardianships was expressed in the second syllabus, as follows:

"The county court of the county in which application is first regularly made for letters of guardianship shall have jurisdiction co-extensive with the state in the settlement of the estate of the incompetent, and for the determination of any and all questions incident thereto, subject to the appellate jurisdiction of the district court."

Turning again to the cases cited above in support of petitioner's contention, we find that all of them, with the exception of Sewell v. Christison, present factual situations identical in character to the cases cited, above, by respondents with reference to the jurisdictional questions. In each case, with the aforesaid exception, the county court where petition was first filed determined the jurisdictional questions prior to such determination by the court where the

second petition was filed, and the first court was held to have exclusive jurisdiction. In the Sewell Case petitions were filed in two different courts on the same day. This court held that the county court first determining the question of its jurisdiction obtained jurisdiction of the administration proceedings to the exclusion of the other court. It is not shown which of the petitions was actually filed first.

In Sewell v. Christison this court actually predicated its decision upon the general rule of res judicata as applied in the ordinary civil action to judgments entered by courts of concurrent jurisdiction in cases involving the same parties and subject matter; the judgment first rendered in such cases is ordinarily a bar to further proceedings in the other court. That rule is also adopted by the court in the fourth syllabus of Jackson v. Haney, supra, and reads as follows:

"Where two actions involving the same issue or issues, between the same parties or their privies, are pending at the same time, so that a final judgment in one would be res judicata or a bar in the other, when the judgment in one becomes final it may be urged in the other by appropriate proceedings, regardless of which action was begun first. It is the first final judgment, although it may be in the second suit, that renders the matter res judicata in the other suit."

There the rule is applied to guardianship proceedings. But in none of these cases was it necessary to extend the rule to cover the question of the effect of priority of filing petitions in the different courts; that question was not present in any of them.

Thus it is revealed that there is actually no conflict between any of the decisions cited above and relied on by the parties. The identical question here presented seems never to have come to this court before, unless it may be said that it was considered to some extent in Presbury v. County Court, supra. That was a will case. The testator had resided in Kay county for many years, but died in Osage county at the home of a son. Immediately after the testator's death the son filed a petition in the county court of Osage county for the probate of the will. Four days later a like petition was filed in the county court of Kay county by the custodian of the will, who was also the guardian of the testator as an incompetent under appointment made in Kay county a short while prior to the death of the testator. Before either court had determined the question of its jurisdiction, the petitioner in Osage county sought a writ in this court prohibiting further proceedings in the county court of Kay county. He relied entirely upon the statute, section 1071, supra, asserting that since his petition to the county court of Osage county was filed prior to the other, the Osage county court by reason of the statute had exclusive jurisdiction to settle the estate. It was held, however, that section 1071 applied only to the cases mentioned in section 1070, O. S. 1931, 58 Okla. Stat. Ann. sec. 6, which deals with the administration of the estates of nonresident decedents. The court said, further, that as to a resident decedent only the county court of his residence could have jurisdiction, as provided by section 1069, O. S. 1931, 58 Okla. Stat. Ann. sec. 5. That case, so far as concerns us here, stands but for the proposition that as to resident decedents section 1071 does not confine jurisdiction to the court first petitioned for letters. It does not purport to overrule the syllabus, above, in Parmenter v. Rowe wherein section 1071 is applied to guardianship cases.

Examination of all the foregoing cases reveals one important question yet outstanding and undetermined by this court. That question is whether the court first petitioned for letters of guardianship or of administration in the estates of resident decedents shall thereafter have exclusive jurisdiction in all cases where it is conceded or conclusively shown that such court at the time of filing the petition was the court of the exclusive statutory venue.

The exclusive venue of proceedings for the appointment of guardian for minor wards resident of the state is the county of their residence. Section 1419, O. S. 1931, 58 Okla. Stat. Ann. sec. 761. In my opinion this applies to incompetent wards. Probate procedure is governed by statute, and the statutes must be substantially complied with. In the Parmenter Case we have construed the statutes with reference to the question of first and exclusive jurisdiction in guardianship cases. In so doing we expressed the rule quoted above. That decision has been neither overruled nor criticized in later cases. However, the court's fourth syllabus in Jackson v. Haney, above, appears to be a contrary pronouncement. The latter holding, as I have said, is based upon the general rule applying to the judgments of courts of general and concurrent jurisdiction.

But the county courts in probate are not courts of concurrent jurisdiction in the matter of the appointment of guardians for wards resident of the state, or for the appointment of administrators and executors for resident decedents. Exclusive jurisdiction in such matters is conferred upon the county court of the county where the ward resides (sec. 1419, supra), and where the deceased resided at the time of his death (sec.

1069, O. S. 1931, 58 Okla. Stat. Ann. sec. 5). Although innocent parties dealing with guardians or administrators serving under apparently valid appointments of courts without jurisdiction are protected, and although such appointments may not ordinarily be attacked collaterally, this in no way should affect proceedings in the same case previously commenced in the proper court so as to deprive that court of its jurisdiction.

Section 1418, supra, specifically adopts to guardianship matters all the suitable statutes applying to the administration of decedents' estates. Section 1071 is one of those statutes so adopted. In Presbury v. County Court, supra, we said that section 1071 applied only to cases of nonresident decedents. Then must it of necessity follow that by the adoption of said section to guardianship cases it could apply only to nonresident wards with property in the state? Such construction does not necessarily follow. In the Presbury Case it was not shown which of the two county courts was the court of the decedent's residence. Neither had determined the question of its jurisdiction, and this court left them where they were when the petition was filed for writ of prohibition. The precise question here presented was not actually determined in that case; it was not known which of the two courts actually had statutory jurisdiction. This court merely refused to interfere.

After due consideration of the statutes and our decisions, I think that a true construction of section 1071 is that the real intent thereof was to accord to the county court where petition in cases of this character is first properly filed and timely notice to the incompetent is had, and there has been no previous adjudication of the same matter, the exclusive jurisdiction of such case. In the matter of the appointment of guardians for local wards a petition may be properly filed only in the county of his residence.

The correct view in cases of this particular character, where the first petition is filed in the court of statutory jurisdiction, is concisely and well stated by Mr. Justice Busby in his specially concurring opinion in Jackson v. Haney, above, as follows:

"I concur in the conclusion reached herein, to wit, that the guardianship appointment by the Muskogee county court is the valid one. But this, for the reason that the petition for probate of will designating the appointment of guardian filed in the Muskogee county court vested that court with jurisdiction of the subject matter under consideration. When the jurisdiction of that court was invoked first, and its machinery placed in motion, it retained its control to the end of the controversy to the exclusion of a court of co-ordinate jurisdiction. To hold that the time of appointment determines jurisdiction would, in my opinion, promote mad races between courts of co-ordinate jurisdiction to see which could enter a final order first. This would tend to discourage that deliberation so essential to a determination of the rights of parties in judicial tribunals."

I am of the opinion, therefore, that by reason of the provisions of sections 1418, 1419, 1071, supra, the county court whose exclusive statutory power to appoint a guardian is properly invoked by petition and service of notice, prior to appointment of a guardian for the same ward by order of some other court, shall have exclusive jurisdiction of such appointment and management of the ward's estate until such time as the proceedings may be removed to some other court as provided by section 1088, O. S. 1931, 58 Okla. Stat. Ann. sec. 10. These sections were originally contained in the same chapter of the Probate Code. They now appear in chapter 64, R. L. 1910, the official statutes, and were not placed in separate chapters until the 1931 Statutes were published.

Under the circumstances here presented, the writ should be denied.